**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| FREDDI J. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-990-SEB-JMS |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Freddi J. Hall ("Hall") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. BACKGROUND**

Hall filed applications for SSI and DIB on June 6, 2003, and on June 12, 2003, respectively, alleging an onset date of disability of January 10, 2003. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted. A hearing was conducted on November 6, 2006. Hall was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Hall, two medical experts (orthopedic surgery and internal medicine), and a vocational expert testified at the hearing. The ALJ issued a decision on May 4, 2007, denying benefits. On July 17, 2007, the Appeals Council denied Hall's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Hall met the insured status requirements of the Act through December 31, 2008; (2) Hall had not engaged in substantial gainful activity since January 10, 2003, the alleged onset date; (3) Hall had the following severe combination of impairments: cervical dystonia; migraine headaches; fibromyalgia; coronary artery disease with a history of a myocardial infarction; diabetes mellitus; a history of asthma; gastroesophageal reflux disease; peptic duodenitis, erosive antral gastritis, and a small sliding hiatal hernia; pancreatitis; a history of an adenomatous colon polyp; anxiety; and an adjustment disorder; (4) Hall did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Hall had the residual functional capacity ("RFC") to perform the full range of light work, that is, she was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, of standing and walking on more than an occasional basis during a work day and/or of performing primarily seated work while pushing and/or pulling arm or leg controls, and she would also be considered capable of performing sedentary work, which requires performing seated work, walking and standing no more than occasionally, and lifting and carrying no more than 10 pounds, and she was able to perform the basic work activities of reaching, carrying, handling, seeing, hearing and speaking; and was able to use judgment, to deal with changes in a routine work setting, to understand, remember and carry out simple instructions, and to respond appropriately to supervision, co-workers, and usual work situations; (6) Hall was capable of performing all of her past relevant work, including her work as a collections worker, an office administrator, a bookkeeper, a supervisor, an assistant manager, and a cashier; and (7) none of Hall's past relevant work required the performance of work-related activities precluded by her RFC. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Hall had not been under a disability, as defined in the Act, from January 10, 2003, through the date of the ALJ's decision.

## II. DISCUSSION

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.   Analysis

In this case, the ALJ determined that Hall had a severe combination of impairments but that she was not disabled because she could perform the full range of light and sedentary work, including her past relevant work. Hall argues that the ALJ's decision is not supported by substantial evidence.

Hall states that she seeks a remand pursuant to sentence four and sentence six based on her single claim that the ALJ erred by not finding that her anxiety disorder was a "severe" impairment.[1] To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 416.920(c), 404.1520(c). As noted above, the burden of proof at step two of the sequential analysis is on the claimant. *Brisco ex rel. Taylor,* 425 F.3d at 352.

Hall contends that the ALJ failed to base his determination that her anxiety disorder was not severe on any medical source opinion. She further asserts that when the vocational expert considered Hall's testimony concerning her symptoms of anxiety, the

---

[1]Although Hall purports to invoke sentence six, she does not develop any argument along those lines. A court may order a "sentence six" remand when a claimant presents new, material evidence which, for good cause, she could not have presented in a prior proceeding. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997); *Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir.1996). No new evidence has been presented here, and therefore, there is no basis on which to consider a remand pursuant to sentence six.

3

vocational expert testified that Hall could not perform any job in the economy. Hall argues that the ALJ should not have dismissed her testimony so readily and that the ALJ should be required to elicit further expert medical and vocational opinion in relation to Hall's anxiety disorder.

The ALJ discussed at length Hall's allegations of anxiety, which were first noted in December of 2002. (R. at 19-21,31-32, 396, 398). At that time Hall complained to her family doctor of mood swings, irritability, crying and anxiety. (R. at 19, 396, 398). No depression was observed, and the physician found Hall's judgment and insight to be intact, but he put her on medication, Climara. (R. at 19). The next notation of anxiety was in February of 2006, when Hall's cardiologist diagnosed her with having had an anxiety attack. *Id.* In May of 2006, Hall sought mental health therapy. *Id.* Hall reported an increase in tearfulness, fears of leaving her home, a desire to withdraw from others, racing thoughts, and sleep and appetite disturbances. *Id.* A Gallahue Mental Health Center ("Gallahue") psychiatrist diagnosed Hall with an adjustment disorder with anxiety and he assessed a Global Assessment of Functioning (GAF) of 55, indicating moderate symptoms or moderate difficulty in social or occupational functioning. (R. at 19-20).

The ALJ discussed the notes of Hall's therapist, Linda Banayote ("Banayote"), a clinical social worker. (R. at 20, 31).  Banayote stated in November of 2006 that she had been treating Hall since April 2006 for anxiety and depression. (R. at 31). According to Banayote, Hall was easily overwhelmed by daily stressors and her anxiety made it difficult for her to leave her home. *Id.* Banayote opined that Hall could not seek or maintain employment because of her psychiatric symptoms. *Id.*

The ALJ noted that Banayote had not reported treatment for twelve consecutive months. *Id.* The ALJ further concluded that, as a social worker, Banayote is not an acceptable source to render a medical opinion or to establish that Hall had a medically determinable mental impairment. *Id.* Because a Gallahue psychiatrist counter-signed the diagnosis of mental impairments, however, the ALJ gave the opinion regarding Hall's ability to function some weight. *Id.* The ALJ properly determined, however, that the question of Hall's "unemployability" or disability is an issue reserved to the Commissioner. *Id.* The ALJ also concluded that the evidence from Gallahue showed that Hall was cognitively intact, she had no difficulties expressing herself about her relationship problems, and such evidence did not establish that Hall's anxiety disorder and adjustment disorder were severe impairments that caused work-related functional limitations. *Id.*

The ALJ also noted that Hall took medication for her anxiety on an "as needed" basis, which for her had been twice a week. (R. at 20). The ALJ made the reasonable inference that this demonstrated that she had only occasional flare ups of anxiety. *Id.* The ALJ found that the record failed to establish that Hall's mental impairments caused limitations in her activities of daily living, her maintenance of social functioning, or her concentration, persistence and pace. *Id.* He cited the psychiatric assessment which indicated that Hall's short term memory, remote recall and her concentration were good. (R. at 20, 566). The ALJ determined that not only were Hall's mental impairments not severe when considered individually, but in combination with her other impairments, they

4

did not meet or equal the requirements of Listing 12.04 (affective disorders) or Listing 12.06 (anxiety related disorders). (R. at 21).

The mental health records show that during the period of May 2006 through November 30, 2006, Hall had therapy with Banayote five times, less frequently than once a month. The most recent, October 30, 2006, notes reflect that Hall had appropriate, logical, sequential and goal directed thought content and processes, and that her mood and affect were sad, depressed and angry. (R. at 555). Judgment and impulse control were both "good." *Id.* The goal at that time was to focus on limit setting and assertiveness, as Hall had felt taken for granted, hurt and frustrated in situations with her family members. *Id.*

Hall is correct in asserting that the ALJ did not rely on any medical expert source in determining that her mental impairments were not severe. Although there was at least one reference to anxiety in the record prior to the hearing, the bulk of the psychiatric evidence was submitted into the record after the hearing and was therefore not reviewed by any medical expert or State Agency physician. The ALJ, however, appropriately determined that the twelve month requirement had not been satisfied. The reference to mood swings, crying, irritability and anxiety in December 2002, before the alleged onset date, does not support a finding that any such symptoms significantly limited Hall's ability to perform basic work activities for twelve months. (R. at 19, 396, 398). Moreover, pursuant to the regulations, a social worker's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(a); 404.1527(a). In addition, Hall's own physician only prescribed medication for anxiety to be taken as needed, which was twice a week.

Hall's contention relative to the vocational expert testimony is not persuasive. The vocational expert was asked, if a person could not work 8 hours a day, could such person perform her past relevant jobs. *Id.* The vocational expert replied, "no." (R. at 616). Further, based on Hall's testimony of her "current situation," the vocational expert testified that there were no jobs in the economy she could perform. *Id.* The premise of each of these hypotheticals was not accepted by the ALJ for the reasons set forth in the decision, and therefore, the vocational expert's response is not dispositive.

Here the ALJ sufficiently articulated his assessment of the mental health record to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). The ALJ built a logical bridge from the evidence to his conclusions. *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) The record does not establish that Hall's anxiety disorder met the durational requirement of the Act. The ALJ's conclusion that Hall's anxiety was not a severe impairment is supported by substantial evidence, and the court cannot resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). In sum, Hall has not satisfied her burden of proof at step two, and the final decision of the Commissioner must be affirmed.

## III. CONCLUSION

There was no reversible error in the assessment of Hall's applications for SSI and DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. For the reasons discussed in this Entry, Hall is not entitled to further relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _07/31/2008_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana